ADAM SCHANTZ, INC, et v STEFFEN et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1384. Decided June 26, 1936

McMahon, Corwin, Landis & Markham, Dayton, for appellants.

Floyd Koogler, Dayton, R. F. Rhotehamel, Dayton, Jerome F. Miller, Dayton, and C. C. Heberling, Dayton, for appellees.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The appeal is by the plaintiffs on a judgment against them.

Final judgment was rendered December 27, 1935, and this appeal is prosecuted under the old law.

Plaintiffs' petition was filed December 21, 1933, and in addition to Frank Steffen and wife, and Joseph F. Steffen and wife, the following were joined as defendants and service of summons issued against each: Harry Toulmin, Jr., and wife, Margaret; The Midland Office Building Company; the Dayton West Fifth Holding Company and the Cappel Corporation. The three defendant corporations were Ohio corporations having their principal place of business in Dayton, Ohio. None of the three corporations filed answer or other pleading, nor were they represented in court at the hearing by counsel or otherwise. The defendant Harry Toulmin, Jr., filed answer in the nature of a disclaimer. The defendants Frank Steffen and Joseph F. Steffen filed a joint answer, wherein, after admitting certain allegations of the petition, they thereafter made a general denial of each and every, all and singular the allegations of plaintiffs' petition not specifically admitted to be true.

By way of further answer these two defendants set up an affirmative defense of fraud.

Plaintiffs, Adam Schantz, Inc., and J. Edward Sauer, filed separate replies, but similar in substance, denying all averments of fraud or any further new matter set up in the answer.

The case went to trial on the issues joined on plaintiffs' petition, the answer of the Steffens and the reply of the plaintiffs. The trial court found against the defendants on the affirmative defense of fraud, but found against the plaintiffs as to the relief sought in the petition.

By stipulation, contained in the journal entry, it was agreed that the cause should be submitted in this court on the transcript of evidence taken before the trial court, supplemented by such additional evidence as parties desired to submit.

The plaintiffs alone submitted additional evidence, by agreement taken before E. E. Fischer, and after being transcribed this was filed in our court as such additional evidence, subject to competency as saved in the record by objections.

Very able and comprehensive briefs have been filed by counsel representing the respective parties.

In the trial court defendants Steffens, before filing answer, filed a demurrer on three separately stated grounds. The first ground attacked the sufficiency of the petition. In the second, claim was made that

there was a misjoinder of parties defendant, and in the third ground it was claimed that there were two causes of action which should be separated, constituting a misjoinder. Upon hearing, the demurrer was overruled.

After the journalizing of the decision on the demurrer, but before answer, the court, by agreement of counsel, permitted plaintiffs to amend their petition at bar by inserting in the thirty-second line on page 8 of the petition after the words "Holding Company" the following:

"And plaintiffs have so entered into possession."

The answer of the Steffens was filed after the amendment at bar.

Plaintiffs' action was one to quiet title and prior to the amendment made at bar through the insertion of the above quoted words, it is very questionable if the petition stated a cause of action. However, this error, if present, is cured through the amendment. The amendment in contemplation of law dates back to the time of the filing of the petition.

The following summary of facts will render understandable the nature of the controversy.

During the year 1916 Adam Schantz, now deceased, and J. Edward Sauer, plaintiffs, by duly executed special warranty deed became the owners in fee simple of the real estate involved in this controversy. Such deed of conveyance was recorded in the Recorder's office of Montgomery County, on July 11, 1916. The real estate in question consisted of part of lots numbers 253 and 254 of the consecutive numbers of lots in the City of Dayton, the same being located on Fifth Street, immediately west of Main.

On or about June 1, 1919, the owners, Adam Schantz and J. Edward Sauer, entered into a written indenture of lease with Frank Steffen and Joseph Steffen whereby the premises were leased to the Steffens as lessees, for a term of ninety-nine years, renewable forever. The said lease was duly recorded in the records of the County Recorder of Montgomery County, Ohio. The stipulated rental for the first ten years was the sum of $2390.40 per annum, and for the next ten years $2989.00 per annum, and for the residue of the term the sum of $3585.60 per annum, such rent to be paid semi-annually in advance, one-half on June 1 and one-half on December 1 of each and every year during the entire term of the lease. In addition, the lessees were obligated to pay all taxes and assessments, rates and charges that are now or may hereafter become a lien thereon during the continuance of this lease. The lessees further bound themselves that within one year from September 1, 1919 to construct a building on said premises not less than three stories high, with other details relative thereto which is not material in the present issue, since the building was constructed as per the stipulation in the lease and no complaint is made in reference thereto. The lease also contained the privilege of purchase, the price during the first ten years being $39,840,00; the next ten years $49,800.00, and at any time thereafter during the term of the lease at $59,-760.00. This option to purchase is not important since there was no attempt to exercise it.

The lease contained the following forfeiture clause:

"**Provided however**, that if said rents, or any part thereof, shall remain unpaid for ninety days, after it shall become due, and without demand made therefor; or, if said lessees, their heirs or assigns, fail to pay the taxes, assessments and rates, as, and when they become due and payable, it shall be lawful for said lessors, their heirs and assigns, at their option, into said premises to reenter, and the same to have again, repossess and enjoy as in their first and former estate, and thereupon this lease and everything therein contained on said lessors' behalf to be done and performed by them, their heirs and assigns, shall cease, determine, and be utterly void. In case of forfeiture the building thereon shall inure to, and be the property of the said lessors, their heirs and assigns, and the said lessees, their heirs and assigns, executors and administrators, shall, notwithstanding said forfeiture, be liable for the payment of all rents then accrued, and for all taxes, charges and assessments paid by the said lessors, their successors or assigns, or which are then a lien on the said realty."

On the 8th day of December, 1924, the Steffens, lessees, entered into an agreement with the Reed Furniture Company, the owners of the premises adjoining the leased premises on the west, whereby each of said parties granted to the other and to the tenants, servants, visitors and licensees of the other the right to make common use of a certain stairway serving the buildings, situated on the premises of both parties, such easement to be pertinent to the land. All rights of the Reed

Furniture Company were subsequently duly transferred to the Fred Cappel Realty Company and again transferred from the Fred Cappel Realty Company to the Cappel Corporation.

This easement right in the stairway and the various transfers thereof is unimportant, except as it explains the purpose of making the Cappel Corporation a party defendant. This defendant, the Cappel Corporation, filing no answer, thereby admits all the allegations of the petition in reference to this easement right.

Also on the 8th day of December, 1924, the defendants, Frank and Joseph Steffen, together with their respective wives, sold, signed and transferred all their right, title and interest in the Schantz-Sauer ninety-nine year lease and granted, leased and demised the building erected by them to the defendant Harry A. Toulmin, Jr. Said assignment and transfer is duly recorded. The rental provided to be paid by Toulman was very much in excess of the stipulated rent in the original ninety-nine year lease. This no doubt was largely due to the fact of the construction of the building by the Steffens.

The assignment and contract of lease between the Steffens and the defendant Harry L. Toulmin, Jr., contained a provision whereby under certain conditions and stipulations, the defendant Toulmin, Jr., might assign all his interests and rights in the premises and release himself from further liability, contingent or otherwise. Toulmin undertook to exercise such right by assigning and transferring to the Midland Office Building Company, a corporation probably organized for the sole purpose of taking over Toulmin's interest in the lease. This instrument was defective in its execution in that it was undated and unacknowledged. These imperfections were sought to be cured, first by supplemental acknowledgment and afterwards by an entire new instrument. The Steffens secured counsel and questioned the release of Toulmin from his personal obligation by reason of the attempted transfers. Without filing any action the controversy was finallly settled by the payment to the Steffens of $8000.00 in cash. $12,000.00 face value in building and loan certificates and $3000.00 in notes of one of the defendant corporations. In consummation of this settlement a reconveyance was made to the Steffens whereby they were reinvested with all the title and rights that they possessed under the original ninety-nine year lease from Adam Schantz and J. Edward Sauer.

At the time of the settlement the Steffens executed a release to Toulmin, Jr., relieving him from all liability by reason of his contractual obligation under the assignment of lease.

The plaintiffs were called in on the final settlement to receive and receipt for the rent due them to date.

The above recital relative to the lease to Toulmin, Jr., and the subsequent controversy relative thereto finally resulting in the settlement and full discharge of defendant Toulmin, Jr., is only important as it bears upon the affirmative defense charging fraud against the plaintiffs in instigating and bringing about the release of defendant Harry Toulmin, Jr.

On this charge of fraud there is an absolute failure of evidence. A reading of the record conclusively shows that the Steffens were represented by counsel and voluntarily entered into the agreement whereby they themselves released the defendant Toulmin, Jr., from further responsibility.

The plaintiffs had no connection with the negotiations or the settlement except to receive any back rent due them and sign a comprehensive receipt showing all rents and other charges paid to date.

On the 5th day of November, 1931, the defendants Steffens and their respective wives sold, assigned and transferred all their right, title and interest under the Schantz-Sauer ninety-nine year lease, including the building erected thereon by them, to the defendant the Dayton West Fifth Holding Company, as lessee. This company was a corporation duly incorporated for the purpose of taking over the leasehold estate. The lease was duly recorded. The defendant the Dayton West Fifth Holding Company in consideration of the conveyance to them of the leasehold, executed to the defendants Frank and Joseph Steffen, a mortgage deed, conveying to them the ninety-nine year leasehold interest in the real estate heretofore referred to to secure promissory note of even date for the sum of $30,000.00. This was a part of the settlement heretofore referred to.

The incorporators of the Dayton West Fifth Holding Company were H. A. Estabrook, H. A. Toulmin, H. A. Toulmin, Jr., F. W. Shaefer, and R. H. McKee. Mr. H. A. Estabrook was the president of the newly organized corporation and F. W. Shaefer the treasurer. The firm of Estabrook, Finn & McKee put $5000.00 of new money into the corporation. The stock when issued was distributed to them, representing their $5000.00 subscription. This venture

did not prove to be successful. Tenants were leaving the building and new prospects as tenants were not secured. Rents were paid to the plaintiffs until the $5000.00 capital and the receipts of rents from tenants were exhausted. Thereafter no further rents were paid to the plaintiffs. Rents due plaintiffs have been in default since June 1, 1932. Taxes and assessments are in default for a longer period. At the time of bringing the action default taxes and assessments amounted to more than $6000.00.

It is disclosed from the record that the defendant The Dayton West Fifth Holding Company has surrendered its charter and gone out of business.

After this rather long narrative of historical facts, we are brought to the major issue presented in this case:

**Were the plaintiffs in possession of the premises at the time of the bringing of the action to quiet title?**

It will be remembered that plaintiffs' petition was filed December 21, 1933. The law is well recognized in Ohio, although differing in many other jurisdictions, that in an action to quiet title there is presented purely the question of fact as to possession and not the manner or method of obtaining it. The case of **State v Griftner, 61 Oh St, 201,** is the leading Ohio case on the question of possession. We quote from page 213 of the opinion:

"In such an action the possession need not be acquired rightfully, so long as it is actual. The object of the action is to test and quiet the title, and this may be done by any one in actual possession, and the question as to whether the possession is rightful will usually be settled by the judgment as to the title. The right to bring the action is not limited by the statute to one rightfully in possession, but it may be brought by anyone in possession. The matter of the right is involved in the trial of the merits of the case."

Sec 11901, GC, is the pertinent section and reads as follows:

"An action may be brought by a person in possession of real property by himself or tenant against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse estate or interest."

The fact being established that payment of rent to plaintiffs was in default for practically a year and a half and delinquent taxes and assessments being due and payable for a longer period of time very clearly and positively authorized the plaintiffs at their option to invoke the forfeiture clause in the original ninety-nine year lease. This forfeiture clause is quoted in full on page 4 of this opinion.

This forfeiture clause says in substance that if the rent or any part thereof remains unpaid for ninety days after it shall become due and without demand made therefor, or if taxes, assessments and rates as and when they become due and payable are not paid, the lessors, their heirs or assigns, at their option, may reenter said premises and the same to have again, repossess and enjoy as in their first and former estate, and thereupon this lease and everything therein contained on said lessors' behalf to be done and performed by them, their heirs and assigns shall cease, determine and be utterly void, etc. The mere failure to pay rent or taxes and assessments does not work a forfeiture. The lessors must exercise the option so to do. This exercise of option may be performed in several ways, some of which would be the following: An entry into the premises and repossession thereof, if the same may be done peaceably; a notice, either oral or written, of the exercise of the option and a subsequent surrender; or the bringing of an action for a court order declaring a forfeiture. It is claimed by the plaintiff that they adopted the first method of taking peaceable possession without objection or hindrance from any of the defendants. Before the bringing of the action, the defendants, any and all, were not only in default for payment of rents, taxes and assessments, but all tenants had vacated the building. The leasehold title was in the Dayton West Fifth Holding Company by reason of the assignment of lease from the Steffens. The president of the Dayton West Fifth Holding Company testifies that after all their funds were exhausted, they abandoned the entire proposition and later surrendered their charter. The Steffens thereafter took no steps to foreclose their mortgage or repossess themselves as against the Dayton West Fifth Holding Company. Neither did they pay any defaulted rent or subsequent accumulations of any taxes or assessments.

The keys to the building were in the hands of one John A. Yates, a realtor. He was called as a witness and said he thought

the keys were originally placed in his hands by Mr. Toulmin. Toulmin, while a witness, was not inquired of as to the keys. This possibly may be due to the fact that Yates was called as the last witness out of turn, after the case had been continued for a day or two in order to allow him to be present. Toulmin does testify that he had nothing to do with the management or control of the building after the transfer to the Midland Office Building Company, and that even before that all his interest was handled by his representative, Mr. F. W. Shaefer. There is nothing in the evidence to indicate, nor is any claim made, that Mr. John A. Yates, the holder of the keys, at any time represented the Steffens. There is evidence that Mr. Yates had a "for rent" sign in the window, and this possibly remained in the window after the bringing of the action. We are unable to conclude that Yates' possession of the keys or his "for rent" sign in the window can in any way inure to the benefit of the Steffens, when Yates was in no sense their agent or representative. The individual or corporation from whom he received the keys and for whom he was seeking to rent the building had long before passed out of the picture. Mr. Toulmin was out by reason of having conveyed all his interest, and the corporation by abandonment and dissolution. Forthermore, neither Toulmin nor either of the two corporations claim any possession or any rights under the lease. Admittedly neither Toulmin nor the two corporations were in possession at the time of the bringing of the action, and any representative authority of Yates would pass out with them. When the principal no longer exists, the agency is terminated.

From the very nature of the situation overt acts of possession must be very limited, and this is true for the following reasons: The entire building was vacant at all times from the time that plaintiffs claim they took possession; so far as the evidence discloses no taxes or assessments had been paid by anybody and there is no evidence, as to insurance, if any, on the building or in whose name any policy may have been taken out, or who paid the premiums. So far as the Steffens are concerned the only activity that there is any evidence of is that one of them contacted Mr. Schantz relative to setting him up in business in one of the rooms and at the same time procured the assistance of an architect looking to the making of plans for the installing of the contemplated business. When Mr. Schantz indicated to the architect and to Mr. Steffens that he

would not finance the proposition, this matter was dropped. At this time they all three visited the building. Steffens says that Schantz suggested that he get the key from Yates. This is the only testimony that indicates that any one representing the plaintiffs knew that Yates had the keys. Steffens says that he got the keys and had a duplicate made for Mr. Schantz. Schantz corroborates the testimony of Steffens that he received the key from him, but does not corroborate that it was a duplicate or that he requested that he get it from Yates. Schantz offers testimony that after the claimed date of taking possession he and his associates made efforts to rent the building but without success. He further testified that they arranged for periodical cleaning up of the inside of the premises. This action was taken in conjunction and arrangement with other adjacent property owners with the idea of keeping the rooms clean and attractive to prospective tenants.

Counsel for the defendants Steffens largely, if not solely, base their contention of lack of possession in the plaintiffs by reason of the keys being in the possession of Mr. John A. Yates, the realtor. While he was on the witness stand he was interrogated as to the keys and when, if at all, they were out of his possession. He maintained a key record and on this record it was disclosed that the keys were given out at various times, for which he was able to furnish day and date, and in each instance they were returned to him. In the main they were given to a representative of the Dayton Power and Light Company for the purpose of making inspection, which apparently was a service that the Gas Company furnished. Apparently there were keys to two front doors and also to the stair door used in conjunction with the Cappel Furniture Company. Mr. Yates produced the keys that were in his hands at the time of the trial.

We are unable to conclude under all the evidence in this record that the possession of the keys by Yates would effectively deny the possession of the plaintiffs. Plaintiffs' acts of supervision in keeping the place clean, while very meager, are more than was done by any of the defendants. In fact, no one of the defendants did anything which would indicate a claimed continuing right. The fact that Steffens gave a key to Mr. Schantz would not be consistent with any claim that the Steffens were still in possession.

We think the evidence supports the issue that the plaintiffs were in possession at the time of bringing the action.

Two further questions are raised by counsel for defendants which we have considered.

First, it is contended that there is no evidence presented that one of the plaintiffs, J. Edward Sauer, was in possession at the time of bringing the action. Mr. Edward A. Sauer, a son of the plaintiff, was called as a witness and he states that his father, the plaintiff, had a paralytic stroke on March 10, 1932, and since that date the father has not been active in any business and that the son has had charge of the Fifth Street property involved in this controversy. His testimony is to the point that prior to the bringing of the action he made frequent demands on the Steffens for payment of back rent.

It is true that he does not testify as to any acts of possession. If the record shows possession by the other tenants in common, such possession would inure to the benefit of all.

There is also the question raised that the plaintiff Adam Schantz, Inc., did not receive a conveyance of the property until November 27, 1933, just thirty days before the bringing of the action. It is argued that non payment of rents and taxes must be more than ninety days in default before the right of forfeiture arises. Predicated on this fact it is urged that under the law the present plaintiff Adam Schantz, Inc., can not avail itself of the default existing before the conveyance. Numerous Ohio cases and other authorities are cited in support of the contention, but all these authorities go to the point of announcing the principle that back rent accruing before the date of the execution of a conveyance can not be collected by the new owner in the absence of an assignment of such rents.

Under the supplemental evidence taken in this court, it is established that Adam Schantz, Inc., was formed and officered in 1930. The original lessor, Adam Schantz, had deceased. leaving a will in which he gave an interest in the property to his wife and two children. one of the children being the Adam Schantz who was a witness in the case. Stock was issued to these legatees representing their respective interests in the real estate in question. Adam Schantz, the witness, attended to the management of this particular property from the time of the death of his father. Through an inadvertence, the actual execution of the deed was overlooked until counsel for the plaintiff Schantz, Inc., in preparation for the filing of the petition discovered the omission. The deed was then made as a consummation of what had been intended from the time of the formation of the corporation. From the time of the formation of the corporation the rents paid were received by the officers of the company and allocated according to the respective interests represented by the issued stock.

It is our conclusion that under the facts of the instant case the right of forfeiture was continuing and was not tolled by reason of the fact that the conveyance to the corporation was not executed until thirty days prior to the bringing of the action.

The finding will be for plaintiffs and entry may be drawn accordingly. Costs will be adjudged against the defendants.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.